CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
IJEOMA U. EKE (Bar No. 331938)
(E-Mail: Ijeoma_Eke@fd.org)
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-3107
Facsimile: (213) 894-7556

Attorneys for Defendant
CHRISTIAN ALEXANDER CHACON

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br><br>CHRISTIAN ALEXANDER CHACON,<br>Defendant. | Case No. CR 20-135-ODW<br><br>**DEFENDANT CHRISTIAN ALEXANDER CHACON POSITION RE: SENTENCING; EXHIBITS**<br><br>Hearing Date: August 16, 2021<br>Hearing Time: 10:00 a.m. |

Defendant Christian Alexander Chacon, by and through his attorney of record, Deputy Federal Public Defender Ijeoma U. Eke, hereby files this sentencing position.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: July 29, 2021

By */s/ Ijeoma U. Eke*
IJEOMA U. EKE
Deputy Federal Public Defender
Attorney for Christian Alexander Chacon

## I. INTRODUCTION

Christian Chacon's life has been anything but easy. Instead of his home being a place of refuge, Mr. Chacon grew up with an abusive and drug addict father that tormented him, his mother, and sister for years. Due to the constant threat of his father, Mr. Chacon and his family constantly moved around, preventing Mr. Chacon from having a stable upbringing. While his father was a source of pain and trauma, watching his father become the parent to his stepsons that Mr. Chacon longed for, was too much for Mr. Chacon to handle. As a way to cope, Mr. Chacon turned to drugs at a young age—an addiction that persisted until his arrest on the instant offense.

Mr. Chacon has worked hard to break free from the cycle of addiction. He has experienced periods of sobriety and has benefited from rehabilitation programs but the trauma from his father has been harder than expected to overcome. However, Mr. Chacon has always demonstrated his resilience and knows he can do better. While incarcerated and upon release, Mr. Chacon intends to address his childhood trauma that has led to his drug use and brought him in front of this Court. In light of the mitigating factors outlined below, Mr. Chacon respectfully requests a sentence of 120 months and 5 years of supervised release.

## II. THE PRESENENCE INVESTIGATION REPORT

The presentence report (PSR) has determined Mr. Chacon's overall offense level to be 27 and criminal history category to be VI, with a resulting guideline range of 130-162 months imprisonment. *See* PSR ¶ 94. Mr. Chacon does not object to the advisory guidelines range as calculated by the Probation Office. Accordingly, and in consideration of the 18 U.S.C. § 3553(a) factors discussed more thoroughly below, Mr. Chacon respectfully requests that the Court adopt Probation's recommendation and sentence him to 120 months' imprisonment with 5 years of supervised release to follow.

## III. APPLICATION OF SECTION 2D1.2 RESULTS IN UNREASONABLE SENTENCING RANGES

The Court should lend little weight to the guideline range in Mr. Chacon's case, which is driven by the quantity of Ice methamphetamine—a mixture containing d-methamphetamine hydrochloride of at least 80% purity. U.S.S.G. § 2D1.1(c)(2); U.S.S.G. § 2D1.1(c), Note (C) to the Drug Quantity Table. Various courts have recently questioned the validity of the 10-to-1 ratio between the guideline ranges for Ice or actual methamphetamine and the ranges for a methamphetamine mixture. *See United States v. Nawanna*, 321 F. Supp. 3d 943, 945 (N.D. Iowa 2018); *United States v. Harry*, 313 F. Supp. 3d 969, 973-75 (N.D. Iowa 2018); *United States v. Ibarra-Sandoval*, 265 F. Supp. 3d 1249, 1252-54 (D.N.M. 2017); *United States v. Hayes*, 948 F. Supp. 2d 1009 (N.D. Iowa 2013); *United States v. Bean*, No. 18-cr-057-03-LM, 2019 WL 1003338, at *1-8 (D.N.H. Mar. 1, 2019*); United States v. Pereda*, No. 18-cr-00228-CMA, 2019 WL 463027, at *1-6 (D. Colo. Feb. 6, 2019); *United States v. Hartle*, No. 4:16-cv-233-BLW, 2017 WL 2608221, at *1 (D. Idaho June 15, 2017). The rationale running through these cases is that because methamphetamine today is uniformly pure, the distinction based on purity is no longer grounded in logic or reality.

When the Commission promulgated the current methamphetamine guidelines, part of the reasoning was that if the drugs were purer, it meant the defendant played a more important role in the drug operation. As the Commission stated: "Since controlled substances are often diluted and combined with other substances as they pass down the chain of distribution, the fact that a defendant is in possession of unusually pure narcotics may indicate a prominent role in the criminal enterprise and proximity to the source of the drugs." *Hayes*, 948 F. Supp. 2d at 1025 (quoting U.S.S.G. § 2D1.1, cmt. n.26(c)) (internal quotation marks omitted).

The Commission's reasoning may have made sense at the time the methamphetamine guidelines were put forward. Given the situation on the ground

today, however, the Commission's "assumption regarding the connection between methamphetamine purity and criminal role is divorced from reality." *Ibarra-Sandoval*, 256 F. Supp. 3d at 1255. As one district court opinion explained, "[d]ue to increases in the average purity of methamphetamine sold today, purity is no longer an accurate indicator of a defendant's culpability or role in a drug enterprise and the presumptive purity assigned to untested drugs does not reflect market realities." *Hartle*, 2017 WL 2608221, at *1. In light of the fact that "most methamphetamine seized at all distribution levels is remarkably pure . . . higher purity is not a good indicator of a defendant's place in the chain of distribution." *Id*. at *3.

Because drug purity is no longer an accurate indicator of a defendant's role in a criminal enterprise, the current methamphetamine guidelines minimize the possibility of individualized sentencing. As another district court opinion explained, "because of the generally very high purity of methamphetamine available today at all levels of the distribution chain, virtually all defendants today face enhanced punishment for a factor present in virtually all methamphetamine cases, not enhanced punishment based on individualized determinations, making the Guidelines purity enhancement excessive." *Nawanna*, 321 F. Supp. 3d at 954.

For Mr. Chacon to receive a guideline range for Ice based on guideline commentary that is no longer grounded in reality would result in an unwarranted sentencing disparity. The Court should take this unwarranted disparity into account and give little weight to the range established by the methamphetamine guidelines. Accordingly, the Court should exercise its discretion, and, in conjunction with relying on the § 3553(a) factors, impose a 120-month sentence of incarceration with 5 years of supervision to follow.

## IV. SENTENCING CONSIDERATIONS UNDER 18 U.S.C. § 3553(A)

### A. The Overarching Principle

What the Supreme Court has described as the "overarching provision" of 18 U.S.C. § 3553(a) is set forth in that provision's very first sentence—that "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes [of sentencing]." *Kimbrough v. United States*, 552 U.S. 85, 101 (2007). This description by the Supreme Court makes clear that this "parsimony principle" is not mere precatory language, but is a key—in fact, the key—requirement that a sentence must satisfy. *See also Nelson v. United States*, 555 U.S. 350, 352 (2009) (per curiam) (reaffirming prior opinions stating that guidelines are not to be presumed reasonable); *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (en banc) (sentencing guidelines to be given no more weight than any other § 3553(a) factor).

In arriving at the appropriate sentence, § 3553(a) directs the court to consider: (1) the nature and circumstances of the offense, (2) the history and characteristics of the offender (3) the need to impose a punishment that reflects the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense, (4) to afford adequate deterrence, (5) to protect the public from further crimes, (6) to provide the defendant with needed education, vocational training, medical care or other correctional treatment, and (7) the kinds of sentences that are available. 18 U.S.C. § 3553(a)(1), (2). Further, by enacting § 3582, Congress explicitly recognized that imprisonment is "not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582(a). Additionally, § 3661 provides that "no limitation shall be placed on the information concerning the background, character, and conduct of the person . . . which a court . . . may consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. Finally, "extraordinary circumstances are not needed to justify a sentence outside the guidelines range." *United States v. Ruff*, 535 F.3d 999, 1002 (9th Cir. 2008).

In sum, in every case, courts must consider all of the statutory factors, not just the guidelines, in arriving at the appropriate sentence. When the factors set forth in 18 U.S.C. § 3553(a) are considered, a sentence of 120 months' imprisonment and 5 years of supervised release is sufficient, but not greater than necessary, to achieve the aims of sentencing.

**B. Mr. Chacon's Personal History and Characteristics (§ 3553(a)(1))**

Mr. Chacon's upbringing was plagued with instability and abuse. Some of Mr. Chacon's earliest memories include hearing his parents fighting and his father beating his mother. As young children, Mr. Chacon and his sister often witnessed their mother screaming and crying as a result of the abuse inflicted by their father. PSR ¶ 62. In addition to being abusive, Mr. Chacon's father also struggled with drug addiction, which often led to him being hospitalized. *Id*. When Mr. Chacon was around 4 or 5 years old, Mr. Chacon's mother decided that she could no longer subject her family to Mr. Chacon's father's abuse, so she divorced him and moved away with the children. However, even after the divorce, Mr. Chacon's father continued to torment his family. *Id*. ¶ at 63. Mr. Chacon's father began stalking his family and when he would find them, he would beat Mr. Chacon's mother in view of Mr. Chacon and his sister. *Id*. Due to the constant threat, Mr. Chacon, his mother, and his sister lived in fear. In order to evade his father's detection, Mr. Chacon's mother constantly moved her family, living with different family members and in hotels. *Id*. This constant state of fear continued until Mr. Chacon's father remarried. *Id*.

However, even with Mr. Chacon's father gone, Mr. Chacon lacked the typical family experience. The instability of his childhood often left Mr. Chacon feeling like he was alone. *Id*. ¶ at 64. These feelings of loneliness were exacerbated by the absence of his father. After Mr. Chacon's parents divorced, Mr. Chacon rarely saw his father. *Id*. ¶ at 65. Mr. Chacon's interactions with his father were limited to family gatherings when his father would attend. *Id*. However, even during those rare interactions, Mr. Chacon's

father rarely spoke to him. *Id*. In contrast, Mr. Chacon's father appeared to be very loving and attentive to his stepsons, which deepened Mr. Chacon's feelings of loneliness and neglect. *Id*. Having to witness his father who had abused his mother and neglected him and his sister lovingly interact with his stepsons, proved too painful for Mr. Chacon. *Id*. Unable to cope with the pain, Mr. Chacon turned to marijuana and alcohol as an escape. *Id*.

Mr. Chacon's history of drug use is a direct result of the trauma inflicted by his father. Simply seeing his father was enough to cause Mr. Chacon to use drugs. At age 18, Mr. Chacon was smoking marijuana regularly. *Id*. ¶ at 68. By the age of 19, Mr. Chacon was also using cocaine and methamphetamine. *Id*. Mr. Chacon's drug use continued until his arrest in the instant offense.

While Mr. Chacon's drug use has spanned the majority of his life, he has made numerous attempts at sobriety. At the age of 26, Mr. Chacon was sober for 8 months; however, witnessing his father's doting relationship with his stepsons led him to relapse. *Id*. Despite the setback, Mr. Chacon attended Cooper Fellowship, a recovery program in Santa Ana for a year. *See* Exh. A, Letter from Cooper Fellowship. After, Mr. Chacon resided in a sober living facility for 3 months. PSR ¶ 68. As part of his sobriety journey, Mr. Chacon decided to confront his father, but the lack of a response led to yet another relapse. *Id*. More recently, Mr. Chacon attended Woodglen Recovery, a detoxification drug rehab center, and Hope House, a sober living facility. *See* Exh. B, Resident Data Sheet. Mr. Chacon remains determined to maintain his current sobriety and intends to continue working towards lasting sobriety while in custody.

**C. The Nature and Circumstances of the Offense (§ 3553(a)(1))**

This instant offense is a direct result of Mr. Chacon's drug addiction spurred by the trauma inflicted by his father. At the time of the instant offense, Mr. Chacon was using drugs regularly to self-medicate. As a result, Mr. Chacon was a drug addict looking to sustain himself and fund his addition since his addiction prohibited him from

sustaining employment. It was under these circumstances Mr. Chacon made the decision to distribute methamphetamine. While Mr. Chacon understands that this does not excuse his actions, it does put them in context.

### D. The Nature and Circumstances of the Offense (§ 3553(a)(2)): Deterrence, Just Punishment, and the Need to Provide Medical Care, Training, or Treatment.

While the instant offense represents a lapse in Mr. Chacon's judgment, a sentence of 120 months' incarceration and 5 years of supervised release is sufficient to achieve the aims of sentencing. While Mr. Chacon's road to recovery has consisted of setbacks, he is dedicated to remaining sober. Mr. Chacon intends to take advantage of treatment available while incarcerated and requests that the Court recommends participation in the Residential Drug Abuse Program ("RDAP") program. While his father has been a trigger for him for many years, Mr. Chacon knows he needs to heal from the trauma in order to move forward and accept responsibility for his addiction.

## V. CONCLUSION

For the foregoing reasons, Mr. Chacon respectfully requests that the Court impose a sentence of 120 months' imprisonment and 5 years of supervised release. Based on the mitigating factors, such a sentence is sufficient, but not greater than necessary, to achieve the aims of sentencing in this case. Mr. Chacon also requests the Court recommends the RDAP program and that he be housed at a Bureau of Prison ("BOP") facility in southern California.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: July 29, 2021

By */s/ Ijeoma U. Eke*

IJEOMA U. EKE
Deputy Federal Public Defender
Attorney for Christian Alexander Chacon